### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**CHARLES ALLEN**                                       **CIVIL ACTION**

**VERSUS**                                             **NO.  10-4507**

**BURL CAIN**                                          **SECTION "J"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.      Factual Background

The petitioner, Charles Allen ("Allen"), is a convicted inmate incarcerated in David Wade Correctional Center in Homer, Louisiana.[2]  On November 20, 2003, Allen was indicted by a grand jury in Jefferson Parish with the second degree murder of Jairo Pinzon.[3]

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 26.

[3]St. Rec. Vol. 1 of 9, Indictment, 11/20/03; Grand Jury Return, 11/20/03.

The record reflects that, around 11:00 p.m. on September 24, 2003, officers responded to a 911 call at 913 11th St. in Gretna, Louisiana where they found the victim, Jairo Pinzon, lying inside the residence near the front door with gunshot wounds.[4]  Pinzon was transported to the Louisiana Medical Center at New Orleans (f/k/a Charity Hospital) where he later died.  He had suffered seven gunshot wounds to his body.

During the course of the investigation, Detective Richard Russ learned that Allen was an associate of Pinzon, that the two men had been business partners at one time, and that the two men were no longer talking.  Detective Russ, along with Detective Eric Becnel, spoke to Allen on September 29, 2003.  Allen told the detectives that he had worked with Pinzon on-and-off since late 1996 or early 1997 as a kitchen installer, but he had started his own company approximately a year and a half earlier.  He stated that he last saw Pinzon one month prior to the murder at which time the two argued over a business matter.  Allen then proceeded to give Detective Russ information about Pinzon's drug use, sexual relationships, and financial situation.  Allen also confirmed his earlier statement to the police that he owned a few guns, including a .45 caliber and 9mm.

After Allen's first statement to the police, the police received the autopsy report which revealed the victim was shot with both a .45 caliber and a 9 mm gun.  Recalling Allen's statement that he owned both types of guns, the officers went to Allen's house in Madisonville to see if he would voluntarily relinquish his guns for ballistic testing.  Allen agreed and subsequent ballistic tests positively identified his guns as the murder weapons.

---

[4]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Allen*, 955 So.2d 742, 746-47 (La. App. 5th Cir. 2007); St. Rec. Vol. 2 of 9, 5th Cir. Opinion, 06-KA-778, pp. 2-4, 4/24/07.

The officers obtained an arrest warrant for Allen, and they arrested him as he left Pinzon's funeral.  Upon his arrest, Allen gave another statement in which he admitted to killing Pinzon.  He stated that he feared for his life and believed that Pinzon would kill him if he did not kill Pinzon first.  He explained that he rented a car and drove to Pinzon's home at a time when he knew Pinzon would not be home.  He entered the home through the back door and climbed into the attic.  He waited there for Pinzon to get home, and he shot Pinzon with both guns as Pinzon walked under the attic opening.  Allen corroborated his confession during his testimony at trial.

Allen's counsel filed motions to suppress the confession, the identification, and the evidence, which were summarily denied by the Trial Court as untimely filed and conclusory on April 6, 2004.[5] The Court granted Allen's request to be evaluated by the defense's forensic psychiatric expert, Dr. David Post.[6]  The Court also granted the defense's request for appointment of a sanity commission to determine Allen's competence to stand trial.[7]  Based on the psychiatric report, the State and defense counsel stipulated at a hearing held June 2, 2004, that Allen was competent to stand trial.[8]

---

[5]St. Rec. Vol. 1 of 9, Trial Court Order, 4/6/04; Motion to Suppress the Confession, 4/6/04; Motion to Suppress the Evidence, 4/6/04; Motion to Suppress Evidence of Identification, 4/6/04.

[6]St. Rec. Vol. 1 of 9, Trial Court Order, 4/14/04; Motion to Allow Doctor to Evaluate Inmate, 4/14/04.

[7]St. Rec. Vol. 1 of 9, Trial Court Order, 4/26/04; Motion to Appoint Sanity Commission to Determine Competency to Stand Trial, 4/14/04.

[8]St. Rec. Vol. 1 of 9, Minute Entry, 6/2/04.

On June 24, 2004, defense counsel reurged the motion to suppress the confession.[9] The Trial Court dismissed the motion at a hearing held on July 7, 2004, when defense counsel failed to appear.[10]

Allen was called to trial before a jury on July 14, 2004.[11] After the jury was selected and sworn, counsel urged the Trial Court to reconsider the motion to suppress the confession.[12] During trial, the Court heard the motion away from the jury, and denied the motion as meritless.[13]

Upon completion of the trial on July 15, 2004, the jury found Allen guilty as charged of second degree murder.[14] At a hearing held July 21, 2004, the Trial Court sentenced Allen to serve life in prison without benefit of parole, probation, or suspension of sentence.[15]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Allen's appointed counsel raised one assignment of error alleging that the Trial Court erred in denying the motion to suppress the confession in light of Allen's requests for counsel during the statement.[16] Allen moved for and was granted leave to file a *pro se* supplemental brief in which he raised 28 assignments:[17]

---

[9]St. Rec. Vol. 1 of 9, Motion to Suppress the Confession, 6/24/04.

[10]St. Rec. Vol. 1 of 9, Minute Entry, 7/7/04; St. Rec. Vol. 4 of 9, Motion to Suppress Hearing Transcript, 7/7/04.

[11]St. Rec. Vol. 1 of 6, Trial Minutes, 5/23/05; St. Rec. Vol. 2 of 6, Trial Transcript, 5/23/05; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 5/23/05.

[12]St. Rec. Vol. 4 of 9, Trial Transcript, pp. 4-12, 7/14/04.

[13]*Id*., pp. 19-48 (hearing), 48-51 (ruling).

[14]St. Rec. Vol. 1 of 9, Trial Minutes, 7/15/04; Jury Verdict, 7/15/04; St. Rec. Vol. 5 of 9, Trial Transcript, 7/15/04.

[15]St. Rec. Vol. 1 of 9, Sentencing Minutes, 7/21/04; St. Rec. Vol. 5 of 9, Sentencing Transcript, 7/21/04.

[16]St. Rec. Vol. 5 of 9, Appeal Brief, 06-KA-0778, 11/20/06.

[17]St. Rec. Vol. 5 of 9, Supplemental Brief, 06-KA-0778, 2/19/07; Motion to File Supplemental Brief, 06-KA-0778, 1/8/07; 5th Cir. Order, 06-KA-0778, 1/9/07.

(1)     He was not advised of his *Miranda* rights before the first interrogation and second statement;

(2)     He was arrested as a result of evidence seized in violation of his *Miranda* rights;

(3)     He was not informed of the charges nor allowed to contact an attorney after his arrest, and the police coerced, cajoled, and deceived him into confessing in spite of his requests for counsel;

(4)     Police did not follow instructions on or complete the rights of arrestee form;

(5)     Police did not record the interrogation in its entirety;

(6)     Police falsified the reports to make the confession look legal;

(7)     Police did not investigate his claims that he was a victim of racketeering or an entrapment conspiracy;

(8)     Counsel erred when he did not timely present the motion to suppress the statement, failed to appear at the motion hearing, lied to him about the legality of the police tactics, and failed to secure the granting of the motion to suppress;

(9)     Dr. Post did not question him about his state of mind at the time of the crime;

(10)    Counsel provided inadequate investigation for exculpatory evidence and was not familiar with the prosecution's file;

(11)    Counsel did not demand discovery of Arthur Allen's statement;

(12)    The prosecution knowingly introduced inadmissible evidence and suppressed key facts about how his statement was obtained;

(13)    Detective Russ was evasive to questions asked about key facts regarding whether Allen was a key witness at the time of the first statement;

(14)    Counsel did not object to leading statements by the prosecution during the preliminary hearing;

(15)    The Trial Court did not question him about how the police obtained the confession before finding the officers' statements to be consistent;

(16)    The Trial Court erred in admitting the confession because it was coerced and cajoled, and his repeated requests for counsel were ignored;

(17)    The Trial Court erred in admitting the first statement without determining whether it was admissible;

(18)    The Trial Court erred in admitting inflammatory and gruesome autopsy photographs;

(19)    Counsel did not object to prejudicial statements by Detective Becnel;

(20)    Counsel did not question him about how police obtained the confession during his direct examination at trial;

(21)    The prosecutor erred in referring to the fact that he did not call witnesses or present evidence to support his own trial testimony and statements;

(22)    Counsel did not object to badgering and berating by the prosecutor during cross-examination of Allen;

(23)    Counsel did not call witnesses or present evidence to support his testimony;

(24)    The prosecutor made prejudicial remarks during closing arguments;

(25)    Counsel argued insanity when "not guilty by reason of insanity" was not a responsive verdict;

(26)    Counsel erred in not having justifiable homicide as a responsive verdict;

(27)    Counsel deceived him into allowing the removal of evidence from the custody of the court; and

(28)    Appellate counsel failed to raise the coercion of the confession by police and was not familiar with the facts of the case.

On April 24, 2007, the Louisiana Fifth Circuit affirmed Allen's conviction and sentence.[18] The Court held that the ineffective assistance of counsel claims (Claim Nos. 8, 10, 11, 14, 19, 20, 22, 23, and 25-28) were not properly before it and instructed that they should be raised on post-conviction review. The Court further held that his claims challenging the inadmissibility of his first statement (Claim Nos. 2, 13, and 17) to police were not timely raised before the Trial Court and therefore were not preserved for review on appeal. Alternatively, the court found them to be meritless. The Court also determined that the claims challenging the voluntariness of his confession, including the issues of his request for counsel during the confession (Claim Nos. 1, 3-6, 15, and 16) were without merit. The Court thereafter addressed each of the remaining claims, and determined that Claim Nos. 7, 9, 12, 18, and 21 were without merit and/or demonstrated no prejudice to Allen and that Claim No. 24 had been abandoned because it was not properly briefed. The Court also directed that the Trial Court notify Allen of the limitations periods for seeking post-conviction relief.

On May 25, 2007, the Louisiana Fifth Circuit refused to consider Allen's motion for rehearing.[19] His conviction and sentence became final 30 days later, on June 25, 2007,[20] because

---

[18]*State v. Allen*, 955 So.2d at 742; St. Rec. Vol. 2 of 9, 5th Cir. Opinion, 06-KA-778, 4/24/07; Certificate of Mailing, 4/24/07.

[19]St. Rec. Vol. 5th Cir. Notice, 06-KA-0778, 5/25/07; Motion for Rehearing, 06-KA-0778, 5/11/07 (dated 5/8/07, postmarked 5/8/07); Addition to Motion for Rehearing, 06-KA-0778, 5/23/07.

[20]The thirtieth day was Sunday, June 24, 2007, leaving the deadline to fall under both state and federal law to Monday, June 25, 2007.

he did not timely file for review in the Louisiana Supreme Court.[21] *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); *Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

Almost two months after his conviction became final, on August 24, 2007, Allen submitted an untimely[22] writ application to the Louisiana Supreme Court challenging the decision from his direct appeal.[23] The Court denied the application without stated reasons on June 20, 2008.[24]

Shortly thereafter, on August 5, 2008, he submitted another writ application to the Louisiana Supreme Court suggesting that his rights had been violated by the review he received in the Louisiana Fifth Circuit pursuant to *State v. Cordero*, 993 So.2d 203 (La. 2008).[25] The Court denied

---

[21]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[22]*See* prior footnote. Allen had 30 days, or until June 25, 2007, to submit his writ application to the Louisiana Supreme Court. He did not date his signature on the writ application until August 24, 2007, which was 89 days after the Louisiana Fifth Circuit issued its opinion and 59 days after his conviction had already become final.

[23]St. Rec. Vol. 7 of 9, La. S. Ct. Writ Application, 07-KA-1842, 9/13/07 (dated 8/24/07, postmarked, 8/28/07).

[24]*State ex rel. Allen v. State*, 983 So.2d 1264 (La. 2008); St. Rec. Vol. 7 of 9, La. S. Ct. Order, 2007-KA-1842, 6/20/08.

[25]St. Rec. Vol. 7 of 9, 08-KH-2432, 10/10/08 (dated 8/5/08, postmarked 9/29/08); St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2008-KH-2432, 10/10/08 (showing postmark 9/29/08). The *Cordero* court addressed the alleged procedural improprieties and summary dismissal without judicial review of *pro se* post-conviction writ applications filed in that court between February 8, 1994 and May 21, 2007. *State v. Cordero*, 993 So.2d at 204.

the application on January 30, 2009, because Allen did not have a post-conviction writ application

subject to the *Cordero* order.[26]

In the meantime, on September 26, 2008, Allen submitted an application for post-conviction

relief to the Trial Court in which he raised 10 grounds for relief:

(1)   the murder was actually a suicide;
(2)   the evidence was obtained in violation of his right not to testify against himself;
(3)   the conviction was obtained by use of a confession that was coerced, cajoled, incomplete, fragmented, tampered with, tainted, and false;
(4)   counsel sabotaged the defense and removed and lost evidence;
(5)   the prosecution was malicious during trial and appeal;
(6)   the trial and appellate courts abused their discretion in admitting evidence and in affirming the conviction;
(7)   the defense's doctor submitted a fraudulent report;
(8)   he was denied the right to appeal and due process by an appellate court involved in criminal and unconstitutional conduct;
(9)   the police, the prosecutor and the courts exceeded legal boundaries and jurisdiction and have aided a treasonous conspiracy by foreign agents; and
(10)  the State interfered with the defense by manipulating the circumstances of his confinement to undermine his defense.

At Allen's request, on April 2, 2009, the Louisiana Fifth Circuit ordered the Trial Court to

rule on Allen's post-conviction application.[27]   The Trial Court issued its order on April 8, 2009,

denying Allen's application.[28]   The Court held that six of Allen's claims (Claim Nos. 1-4, 6, and 7)

were procedurally barred from further review under La. Code Crim. P. art. 930.4(A) because the

claims already had been litigated on direct appeal.[29]   The Court also found Claim Nos. 5, 8, and 9,

---

[26]*State ex rel. Allen v. State*, 999 So.2d 754 (La. 2009); St. Rec. Vol. 7 of 9, La. S. Ct. Order, 2008-KH-2432, 1/30/09.

[27]St. Rec. Vol. 2 of 9, 5th Cir. Order, 09-KH-189, 4/2/09.

[28]St. Rec. Vol. 2 of 9, Trial Court Order, 4/8/09.

[29]La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are

8

were procedurally barred from review pursuant to La. Code Crim. P. art. 930.4(B) and (C) because they inexcusably were not raised to the trial court or on direct appeal and could have been.  Finally, the Court resolved that Allen's last claim (Claim No. 10) was not cognizable on post-conviction review pursuant to La. Code Crim. P. art. 930.3.[30]

On review of the order, the Louisiana Fifth Circuit found no error in the Trial Court's denial of relief as to all but Allen's fourth claim, raising grounds of ineffective assistance of counsel.[31]  The Court referenced its holding on direct appeal that the ineffective assistance of counsel claims should be addressed on post-conviction review.  As a result, the Court remanded the matter for the Trial Court to address the ineffective assistance of counsel claims and denied the writ in all other regards.

The Trial Court later denied relief on the ineffective assistance of counsel claims after receiving a response from the State.[32]  Relying on the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) and related state law, the Court determined that counsel's actions were not deficient and that Allen made no showing of prejudice.

---

not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

[30] Under La. Code Crim. P. art. 930.3, post-conviction relief will not be granted unless the petitioner establishes that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[31] St. Rec. Vol. 6 of 9, 5th Cir. Order, 09-KH-384, 6/19/09; 5th Cir. Writ Application, 09-KH-384, 5/20/09 (postmarked 5/11/09, not dated).

[32] St. Rec. Vol. 2 of 9, Trial Court Order, 9/30/09; State's Response, 8/17/09; Trial Court Order, 7/17/09.

Allen again sought review of the denial of his post-conviction claims in the Louisiana Fifth Circuit.[33]  The Court denied relief on December 23, 2009, finding no error in the Trial Court's order denying relief on the ineffective assistance of counsel claims and refusing to revisit the other claims already disposed of in its prior orders.[34]  The Court also denied Allen's request for rehearing because Louisiana law does not provide for rehearing on an application for supervisory review.[35]

Allen sought review of this order in the Louisiana Supreme Court.[36]  He supplemented his application eight times.[37]  After this federal petition was filed, the Louisiana Supreme Court denied the application without stated reasons on April 8, 2011.[38]

## II.   Federal Petition

On December 15, 2010, the clerk of this Court filed Allen's petition for federal habeas corpus relief, in which he raises ten grounds for relief:[39]

(1)     the murder was an act of suicide involving a conspiracy to drive him "past the point of insanity," and he was not competent at the time of the offense;

(2)     (a) the evidence was obtained in violation of his right not to be compelled to be a witness against himself, (b) the police falsified the *Miranda* rights verification evidence, and (c) counsel was ineffective for failure to protect the record;

---

[33]St. Rec. Vol. 6 of 9, 5th Cir. Writ Application, 09-KH-963, 11/13/09 (dated 10/29/09, postmarked 11/4/09).

[34]St. Rec. Vol. 6 of 9, 5th Cir. Order, 09-KH-963, 12/23/09.

[35]St. Rec. Vol. 6 of 9, 5th Cir. Order, 10-KH-39, 2/26/10.

[36]St. Rec. Vol. 8 of 9, La. S. Ct. Writ Application, 10-KH-0748, 4/1/10 (postmarked 3/30/10, not dated); La. S. Ct. Letter, 2010-KH-748, 4/1/10 (showing postmark 3/30/10).

[37]St. Rec. Vol. 8 of 9, Supplement to Writ Application, 4/15/10; Second Supplement, 4/23/10; Third Supplement, 5/19/10; Fourth Supplement, 6/29/10; Fifth Supplement, 11/18/10; St. Rec. Vol. 9 of 9, Sixth Supplement, (date illegible, alleged to be 12/13/10); Seventh Supplement, 2/25/11; Eighth Supplement, 3/2/11.

[38]*State ex rel. Allen v. State*, __ So.3d __, 2011 WL 2418639, at *1 (La. Apr. 8, 2011).

[39]Rec. Doc. Nos. 1, 9.

(3)     (a) the conviction was obtained by use of a confession that was coerced, cajoled, incomplete, fragmented, tampered with, and false, and (b) counsel did not properly question him during the suppression hearing;

(4)     counsel sabotaged the defense including (a) removal and loss of evidence, (b) he lied about the police tactics, (c) he failed to file proper motions to suppress, (d) failed to properly question him, (e) failed to present the only defense, (f) failed to make closing arguments, (g) failed to appear at the motion to suppress, and (h) he lied about planned post-conviction efforts;

(5)     the prosecution was malicious during trial and appeal, including conspiring to make him try to escape from prison as further grounds for prosecution;

(6)     the trial and appellate courts abused their discretion in admitting evidence and in affirming the conviction, including the denial of the motion to suppress the confession;

(7)     the defense's doctor submitted a fraudulent report stating he was competent at the time of the offense without examining the relevant evidence;

(8)     he was denied the right to appeal and due process by an appellate court;

(9)     the police, the prosecutor, and the state courts aided in a treasonous conspiracy by foreign agents and native proxy conspirators by exceeding legal boundaries and jurisdiction; and

(10)    the State interfered with the defense by manipulating the circumstances of his confinement in an attempt to undermine his defense, including use of informants and hypnosis, denial of access to legal materials, and programming him "with extreme fears" to make him escape.

The State filed a response in opposition to Allen's petition alleging that some of the claims were not exhausted in the state courts, some of the claims are in procedural default, the petition was not timely filed, and equitable tolling does not apply.[40]  Allen filed a reply and amended reply to the State's opposition arguing that he is actually innocent and that his claims have merit.[41]

---

[40]Rec. Doc. No. 17.

[41]Rec. Doc. Nos. 19, 20.

### III.   **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[42] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on November 24, 2010.[43]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State raises both the failure to exhaust and procedural default.   The record supports both conclusions.   However, because the Court agrees that Allen's federal petition is not timely filed, the Court will proceed to that defense.

### IV.   **Statute of Limitations**

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[44]   *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).   As discussed above,

---

[42]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[43]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Allen's petition on December 15, 2010, when pauper status was granted. Allen's signature on the petition is dated November 24, 2010. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing to this Court.

[44]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here: (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

Allen's conviction is deemed final on June 25, 2007, which was 30 days after the Louisiana Fifth Circuit denied his request for rehearing after direct appeal, and he did not timely seek further review. Under the plain language of § 2244, Allen had until June 24, 2008, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Allen's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the

---

A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, the AEDPA's one-year filing period began to run on June 26, 2007, the day after Allen's conviction was final. The period ran uninterrupted for 365 days until June 24, 2008, when it expired. Allen had no properly filed state post-conviction or other collateral review pending during that time period. Another 93 days would pass after the end of the AEDPA filing before he submitted his first application for post-conviction relief to the state trial court on September 26,

2008.  That pleading, filed in the state courts after expiration of the AEDPA filing period, does not provide any tolling benefit.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The Court is aware that Allen submitted a writ application to the Louisiana Supreme Court on August 24, 2007.[45]  This application should have been filed on or before June 25, 2007, to have been timely filed under La. S. Ct. Rule X§5.

As noted above, pursuant to La. S.Ct. Rule X§5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment under review or from the denial of a timely filed application for rehearing.  *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).  In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing.  *See*, *Causey*, 450 F.3d at 601.

Allen dated his signature on the pleading on August 24, 2007, which for purposes of the mailbox rule is the earliest date on which he could have given the pleading to prison officials for mailing to the Louisiana Supreme Court.  A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines.  *Butler v. Cain*, 533 F.3d 314, 318-319 (2008); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed).  Allen's 2007 Louisiana Supreme Court application did not interrupt or toll the AEDPA filing period which expired on June 24, 2008, as calculated above.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal

---

[45]St. Rec. Vol. 7 of 9, La. S. Ct. Writ Application, 07-KA-1842, 9/13/07 (dated 8/24/07, postmarked, 8/28/07).

habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Allen has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.  Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner.  *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d

at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Under a broad reading, the Court finds that Allen appears to offer a number of reasons in his petition why his petition should be considered timely.[46]  Because none of these suggestions fall within the considerations of statutory tolling, addressed above, the Court will consider them under the guise of equitable tolling.

Allen suggests that the state law prohibited tolling for motions for rehearing which are not allowed under the procedural rules of court.  As indicated in this Court's procedural history, in calculating the finality of Allen's conviction, this Court included credit for the pendency of the motion for rehearing filed in the Louisiana Fifth Circuit after his direct appeal.[47]  *See Wilson v. Cain*, 564 F.3d at 702 (timely filed motion for rehearing must be considered in determining the finality of a conviction).  Thus, under federal law, Allen received a calculation benefit for that motion for rehearing.  His other motions for rehearing were submitted in the state courts long after the AEDPA filing period expired and are not relevant to the calculations included here.  This claim does not warrant further consideration.

Allen claims that he did not have access to legal materials or complete and timely information from inmate counsel during his post-conviction efforts.  First, as noted above, Allen did not begin his post-conviction efforts until after the AEDPA filing period already had expired.  In fact, he indicates in his petition that his alleged jailhouse troubles and mental upset did not start until

---

[46]Rec. Doc. No. 1, pp. 36-39, question 18.

[47]St. Rec. Vol. 5th Cir. Notice, 06-KA-0778, 5/25/07; Motion for Rehearing, 06-KA-0778, 5/11/07 (dated 5/8/07, postmarked 5/8/07); Addition to Motion for Rehearing, 06-KA-0778, 5/23/07.

<u>after</u> his appeal writ to the Louisiana Supreme Court was denied.[48]  He also has not alleged any more than conjecture about his inmate counsel's role in his post-conviction efforts (which came after the AEDPA filing period expired) or that he was intentionally misled in some way by inmate counsel in connection with the 2007 Louisiana Supreme Court writ application.  Nevertheless, it is well settled in this circuit that an inmate's ignorance of legal requirements does not justify equitable tolling.  *Marshall v. Cain*, 228 F.3d 408, 2000 WL 1056117, at *1 (5th Cir. Jul. 19, 2000) (Table, Text in Westlaw) (citing *Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000)).

Further, Allen has not suggested how his access to unspecified legal materials in any way impacted his ability to timely file his 2007 Louisiana Supreme Court writ application, or any of his state pleadings for that matter.  The Fifth Circuit has refused to find a need for equitable tolling under similar circumstances where rare and extraordinary circumstances were not proven on the record with some specificity.  *Caldwell v. Dretke*, 182 Fed. Appx. 346, 347 (5th Cir. 2006).  In finding that equitable tolling was not warranted, the *Caldwell* court noted that its decision was confirmed by "the absence of specific evidence of the impact of his medical conditions on his ability to file a timely application, the lack of evidence regarding why certain documents were necessary to the preparation of his application, and the fact that [petitioner] was able to prepare a lengthy application."  Allen's situation is similar to that addressed in the *Caldwell* case.  He has not specified any particular legal materials needed to timely file his 2007 Supreme Court writ application, which was mostly repetitious of his very lengthy supplemental appeal brief filed almost two years prior to that in early 2006.  There is no merit in this argument.

---

[48]Rec. Doc. No. 1, p. 37.

Allen also suggests that his petition is timely because it was filed within one year of exhausting his state post-conviction remedies.  The Fifth Circuit has held that the operative date for limitations purposes is when the state conviction becomes final upon completion of state appellate review, not upon the completion of the state post-conviction process.  *See Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).  Furthermore, although the filing period under the AEDPA is shorter than that under state law, the AEDPA's statute of limitations does not improperly run afoul of Louisiana law or the Due Process and Equal Protection Clauses.  Any such conflict does not render the AEDPA unconstitutional and, therefore, does not provide a basis for habeas corpus relief or equitable tolling.  *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Ellis v. Martin*, 202 F.3d 281, 1999 WL 1101241 at *3 (10th Cir. Dec. 6, 1999) (Table, Text in Westlaw).[49] Moreover, the AEDPA itself provides for resolution of any such conflict between state and federal post-conviction rights through its statutory tolling provisions discussed below.  *See* 28 U.S.C. §2244(d)(2).  This latter statement is also cause to reject Allen's suggestion that his time lapsed because the state courts took too long to rule on his pleadings.  Under statutory tolling, already applied, any such delay would have enured to Allen's benefit.  These claims do not warrant further consideration.

Allen also claims that, but for inmate counsel's delay, he would have filed his federal petition in August of 2010.  He claims that inmate counsel held his papers claiming he would type them and never did.  This is of course is of no moment since the AEDPA filing period expired in June of 2008.  Even if Allen could have filed this federal petition a few months earlier than he did, it still would have been untimely under the AEDPA.

---

[49]Although the *Ellis* case is without precedential value and has been designated as an unpublished decision by the Tenth Circuit, this Court finds the reasoning of *Ellis* instructive.

Allen's most prevalent urging is that his petition should be considered timely, because he is actually innocent of second degree murder and because his claims have merit. Allen's actual innocence argument is foreclosed by existing jurisprudence in this circuit which establishes that equitable tolling of the federal limitations period is not warranted simply because the petitioner claims he is actually innocent. *Henderson v. Thaler*, 626 F.3d 773, 780–81 (5th Cir. 2010); *Cousin*, 310 F.3d at 849 (citing *Felder*, 204 F.3d at 171); *Higgins v. Cain*, No. 07-9729, 2010 WL 5437279, at * 5 (E.D. La. Dec. 3, 2010), report adopted by, 2010 WL 5441627, at *1 (E.D. La. Dec. 27, 2010) (Africk, J.); *Mead v. Cain*, No. 08-3173, 2010 WL 3488219, at *12 (E.D. La. Apr. 21, 2010), report adopted by, 2010 WL 3502801, at *1 (E.D. La. Aug. 26, 2010) (Berrigan, J.). Furthermore, the limitations period is not tolled merely because the petitioner believes he is entitled to relief on the claims raised. *United States v. Alexander*, No. Crim. A 94-343, 2000 WL 1092618 at *3 (E.D. La. Aug. 2, 2000) (Barbier, J.); *Higgins*, 2010 WL 5437279, at * 5; *Mead*, 2010 WL 3488219, at *12; *Gaines v. Cockrell*, Nos. 3-02-CV-2003-G/3-02-CV-2373-G, 2003 WL 222444 (N.D. Tex. Jan. 28, 2003) (Order adopting Report) (citing *Melancon*, 259 F.3d at 408).

For the foregoing reasons, the Court does not find that Allen has established an entitlement to the extraordinary remedy of equitable tolling in connection with his untimely 2007 application to the Louisiana Supreme Court. He has presented nothing to indicate that his delayed-filing of that crucial pleading in 2007 was the result of his having been misled or prevented from asserting his rights in a timely fashion. He therefore is not entitled to equitable tolling related to that pleading. Because that pleading was untimely submitted to the Louisiana Supreme Court, the AEDPA filing period expired as calculated above on June 24, 2008.

Allen's federal petition is deemed filed on November 24, 2010, which is almost two and one-half years after the AEDPA filing period expired on June 24, 2008.  Therefore, Allen's federal petition was untimely filed and must be dismissed for that reason.

**V.      Recommendation**

It is therefore **RECOMMENDED** that Charles Allen's petition for issuance of a writ of habeas corpus filed under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[50]

New Orleans, Louisiana, this 30th day of June, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[50]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

21